RECEIVED
IN LAKE CHARLES, LA
OCT - 2 2014

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | DOCKET NO. 2:13CR00224 |
| VS. | : | JUDGE MINALDI |
| SETH RYAN BIVENS | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court are the defendant's objections to the Presentence Report ("PSR") prepared by the Probation Department.

First, the court notes that the defendant's Motion for Downward Depature, which contained these objections, was filed on September 3, 2014. The objections were due fourteen days after defense counsel received the objections, mailed on December 26, 2013. These objections were filed approximately eight months late. Embedding untimely objections in a timely Motion for Departure does not make the objections timely. The court will consider these objections but warns counsel that late filings will not be considered in the future.

In his first objection the defendant contests a two (2) level increase for possession of material involving a minor who has not reached the age of 12. PSR ¶ 24. The defendant argues that the government has not proven nor provided any evidence to prove that any of the children in the videos or images in the possession of Bivens were, in fact, under the age of 12. Although Bivens admitted at the time of his plea that he had received child pornography, he did not make any admissions

regarding the alleged ages of any person depicted in the images. Therefore, the defendant objects to the two (2) level increase.

USSG §2G2.2(b)(2) directs that if the material involved a prepubescent minor or a minor who had not attained the age of 12 years, the offense level is to be increased by two (2) levels. The PSR contains several descriptions of videos containing child pornography recovered from the defendant's computer and external hard drives. The titles of at least five of these videos contain references to young boys from the age of 3 years to 11 years. Also, in the Stipulated Factual Basis for Guilty Plea filed in this matter, and signed by all parties, the defendant agreed that, "HSI seized the defendant's computers, phone, and external hard drives. A forensic examination revealed known child pornography on the computer including videos depicting prepubescent children (between the ages of 2 and 13 years old) engaging in sexual activity." The Factual Basis further indicates that, after a Miranda warning, "He also stated that he downloaded and viewed child pornography depicting children as young as two years old."

Sentencing is a judicial function and the appropriate sentence in a guilty plea case is to be determined by the judge. U.S.S.G. ch. 6, pt. B intro., cmt. Thus, under the Guidelines parties may not enter into stipulations of misleading or non-existent facts, Sentencing Guidelines § 6B1.4(a)(2) (policy statement); § 6B1.4, Commentary (policy statement), they must "fully and accurately disclose all factors relevant to the determination of sentence,"and they must identify any facts relevant to sentencing about which they are in dispute, § 6B1.4(b) (policy statement). Additionally, the court is not bound by the parties' stipulations of facts, "but may with the aid of the presentence report, determine the facts relevant to sentencing." § 6B1.4(d) (policy statement); § 6B1.4, Commentary (court is not and cannot be expected to rely only upon parties' stipulation in determining sentence);

*United States v. Gaines,* 888 F.2d 1122, 1123 (6th Cir.1989) (district court not bound by stipulation that defendant was a minor participant); *United States v. Nunley,* 873 F.2d 182, 187 (8th Cir.1989) (district court not bound by stipulation that defendant accepted responsibility).

"Prohibiting the entry of misleading stipulations, and allowing the judge to rely on information outside a factual agreement, prevents 'fact bargaining'—agreeing to facts calculated by the parties to produce a desired sentence." *Unityed States v. Moya, 730 F.Supp. at 40.* The Guidelines do not permit parties to "cloak the facts to reach a result contrary to the guidelines' mandate." *Id.* (quoting *United States v. Scroggins,* 880 F.2d 1204, 1214 (11th Cir.), petition for cert. filed, 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (Nov. 24, 1989). "This prohibits not only the entry of stipulations that are genuinely false but also those that purport to resolve disputed facts." *Id.* (citing *United States v. Forbes,* 888 F.2d 752, 754 (11th Cir.1988) (district court was not bound by minor participant stipulation because otherwise government and defendant could resolve crucial, disputed facts undercutting court's fact-finding role)). "If a fact relevant to sentencing is uncertain or genuinely in dispute, the parties should so inform the judge." *Id.* (citing Sentencing Guidelines § 6B1.4, Commentary (policy statement)). "Only when a judge has access to all relevant information can he assure that the plea agreement does not undermine the purposes of the Guidelines and that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the offense." *Id.*

When making factual findings for sentencing purposes, a district court "may consider any information which bears sufficient indicia of reliability to support its probable accuracy." *United States v. Harris,* 702 F.3d 226, 230 (5th Cir.2012) (internal quotation marks and citation omitted). "Generally, a PSR bears sufficient indicia of reliability to be considered as evidence by the

3

sentencing judge in making factual determinations." *Id.* (internal quotation marks and citation omitted). However, "[b]ald, conclusionary statements" in a PSR are not sufficiently reliable. *See id.* at 230 n. 2 (quoting *United States v. Elwood*, 999 F.2d 814, 817–18 (5th Cir.1993)). "If the factual recitation [in the PSR] lacks sufficient indicia of reliability, then it is error for the district court to consider it at sentencing—regardless of whether the defendant objects or offers rebuttal evidence." *See id.* at 231. But if the factual recitation in the PSR bears sufficient indicia of reliability, then the "defendant bears the burden of demonstrating that the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it." *United States v. Ollison*, 555 F.3d 152, 164 (5th Cir.2009) (citation and internal quotation marks omitted); *see also United States v. Ayala*, 47 F.3d 688, 690 (5th Cir.1995) (confirming that "in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it"). *United States v. Vital*, 68 F.3d 114, 120 (5th Cir.1995). Rebuttal evidence must consist of more than a defendant's objection; it requires a demonstration that the information is "materially untrue, inaccurate or unreliable." *Harris*, 702 F.3d at 230; *U.S. v. Zuniga*, 720 F.3d 587 (5th Cir. 2013).

Based upon the facts before the court, including the fact that the defendant affirmed in his guilty plea that the facts stipulated were an accurate statement of his case, this court finds that the facts contained in the PSR are sufficiently reliable. Therefore, the burden of contesting these facts falls upon the defendant. At the time of this writing, the defendant has offered no evidence that the information is "materially untrue, inaccurate or unreliable." Accordingly, the defendant's objection is OVERRULED.

In the next objection, Bivens argues that he should not be given a two (2) level increase because the offense 'involved distribution' of child pornography. PSR ¶25. At the time of his plea,

Bivens admitted that he had received child pornography; however, he argues that he never made any admissions that he distributed child pornography. Bivens argues that this increase is based solely upon the fact that the defendant obtained pornographic files through 'peer-to-peer' file sharing programs and that these file sharing programs may make the files *available* for download to third parties. The government has not proven or produced any evidence to prove that the defendant actually 'shared' or 'distributed' any files alleged to be child pornography to any third parties. On the contrary, the defendant argues that he thinks that any file sharing capability on his software was turned off. Further, since the PSR also recommends that the defendant receive a two (2) level increase because of his use of a computer or interactive computer service to receive the files, the defendant submits to the Court that this additional two (2) level increase has the effect of punishing or increasing the punishment of the offense twice for the same or similar conduct. PSR ¶27. Since the defendant does not object to the two (2) level increase recommended for his use of a computer to receive the files, he requests that the Court not consider the two (2) level increase recommended in ¶ 25 of the PSI as he contends that this effectively duplicates the punishment and guideline increase that is recommended in ¶ 27 of the PSR.

USSG §2G2.2(b)(3)(F) provides that if the offense involved distribution other than distribution described in subdivisions (A) through (E), the offense level is to be increased by two (2) levels. Application Note 1 in the Commentary to §2G2.2 defines distribution as "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant."

5

Probation submits that the discovery of the instant offense resulted from a law enforcement officer conducting an undercover operation by utilizing computer software designed to allow investigators to browse Internet Protocol addresses, which are on an open and publicly accessible network, to determine if evidence of child pornography images are present. During the investigation, the officer observed video files which were titled by names that are indicative of child pornography images on an Internet Protocol address assigned to the defendant. The Stipulated Factual Basis for Guilty Plea indicates that, "On October 23, 2013, Louisiana State Police used a department issued computer to establish a direct connection with the defendant's computer though peer-to-peer file-sharing software. Usually peer-to-peer software allows for downloading from multiple sources or users; however, Police software disabled the network's multiple source feature. Therefore, police downloaded child pornography files only from the defendant's computer (not other users on the peer-to-peer network)." This ability to download files from the defendant's computer by law enforcement officers during this investigation would also indicate the file sharing capabilities were not turned off.

Further, according to the Stipulated Factual Basis for Guilty Plea, "Police downloaded approximately 36 video files containing known child pornography or names associated with child pornography directly from the defendant's computer. After examining the downloaded files, police saw that the files were videos of prepubescent children engaging in sexual activity." The Stipulated Factual Basis for Guilty Plea also indicates that, after a Miranda warning, the defendant "also stated that he was aware that other individuals could obtain the files on his computer through the peer-to-peer networks that he used to collect and distribute child pornography." A subsequent forensic examination of the defendant's computer revealed 130 videos of child pornography, all of which

were located in the "Saved" folder for *Limeware* and *Frostwire*, both of which are file sharing programs that allow other users to upload and download files freely via an internet connection.

In *United States v. Todd*, 100 Fed.App'x. 248 (5th Cir. 2004), and *U.S. v. Powers*, 379 Fed.App'x. 347 (5th Cir. 2010), the Court held that the use of peer-to-peer file sharing programs warrants the enhancement for distribution as the defendants made the images of child pornography available for other users of the peer-to-peer file sharing program. As noted by Probation, several other circuits have also addressed this particular enhancement, and have reached the same conclusion. These include the Fourth Circuit (*U.S. v. Layton*, 564 F.3d 330, 2008), the Seventh Circuit (*U.S. v. Carani*, 492 F.3d 867, 2007), and the Eighth Circuit (*U.S. v. Dodd*, 598 F.3d 449, 2010; *U.S. v. Estey*, 595 F.3d 836, 2010; and *U.S. v. Durham*, 618 F.3d 921, 2010).

Accordingly, the two (2) level enhancement for distribution under USSG §2G2.2(b)(3)(F) is applicable and the defendant's objection is OVERRULED.

Bivens also raised the argument that increasing the defendant's offense level pursuant to USSG §2G2.2(b)(3)(F) for distribution, and increasing the offense level pursuant to USSG §2G2.2(b)(6) for the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material, constitutes impermissible double counting.

Application Note 4(B) in the Commentary to USSG §1B1.1 (Application Instructions), provides that "Absent an instruction to the contrary, enhancements under Chapter Two, adjustments under Chapter Three, and determinations under Chapter Four are to be applied cumulatively. In some cases, such enhancements, adjustments, and determinations may be triggered by the same conduct. The Fifth Circuit Court of Appeals has also held that double counting is prohibited only

if the particular guidelines at issue specifically forbid it. See *U.S. v. Barraza*, 655 F.3d 375, 384 (5th Cir. 2011). There is nothing in the application notes to USSG §2G2.2 that prohibits the imposition of both enhancements. Accordingly, these enhancements are warranted.

Next, Bivens objects to the four (4) level increase because the materials involved 'portrays sadistic or masochistic conduct or other depiction of violence. PSR ¶ 26. He argues that the government has not provided any evidence to prove that the videos contain such depictions. The defendant argues that the PSR gives no basis in ¶ 26 for the determination that the images portray sadistic, masochistic or violent depictions.

USSG §2G2.2(b)(4) provides for a four (4) level enhancement if the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. As indicated in the descriptions of a sampling of the child pornography videos recovered from the defendant's computer, at least two of these videos depicted adult males anally penetrating prepubescent males. There are also numerous scenes and/or images of adult males performing oral sex on prepubescent males, as well as prepubescent males performing oral sex on adult males.

In *U.S. v. Lyckman*, 235 F.3d 235 (5th Cir. 2000), the Fifth Circuit Court of Appeals addressed the four (4) level guideline enhancement at issue in this case. The Court of Appeals held in that case that, "it was certainly reasonable for the district court to infer that the conduct depicted by the photographs caused the children pain, physical or emotional or both, and therefore constitutes sadism or violence within the meaning of the guideline." The Fifth Circuit also addressed this enhancement in *U.S. v. Comeaux*, 445 Fed.Appx. 743, 745 (5th Cir. 2011); see also *U.S. v. Hewitt*, 326 Fed.App'x. 756 (5th Cir. 2009); *United States v. Richey*, 248 F.3d 1143 (5th Cir. 2001).

Accordingly, the defendant's objection is OVERRULED.

Bivens next objects to the five (5) level increase because the offense involved more than 600 images and/or video depiction more than five (5) minutes. PSR ¶28. The defendant objects to this increase on the basis that this information, even if true and/or accurate, should provide no enhancement to the punishment already faced.

A forensic examination of the defendant's computers and related hard drives discovered a total of sixty-eight (68) still images of child pornography and two-hundred ninety-four (294) videos of child pornography. PSR ¶17. While the defendant does not challenge the accuracy of this information, the defendant avers that any increase in the recommendation based solely upon the number of images and/or length of videos shows no rational basis for an increase in punishment. The defendant admitted that he received child pornography and accepted the responsibility for his actions. In his interview with Dr. Simoneaux, the defendant described his actions regarding pornography as 'hoarding' – not only child pornography but also other pornography. Bivens submits that this hoarding and obsessive-compulsive behavior led to the defendant having a large number of images and videos.

While it may be argued that the involvement of more than 600 images and/or videos in excess of five minutes would tend to negate any suggestion that the defendant's actions were accidental or the result of curiosity, the defendant has freely and voluntarily admitted to the criminality of his actions and suggests that this recommended enhancement has no rational basis for a further increase in punishment. Numbers, amounts and figures are often used in criminal court in order to determine that a defendant (1) intended certain actions based upon the number or amount [i.e. possession with intent to distribute drugs] or (2) that his conduct rose to a more serious level of an offense [i.e. theft of property over a certain amount] based upon an amount. Bivens argues,

9

however, that the recommended enhancement stated in ¶ 28 does not seem to be an enhancement based upon a rational reason and/or interest. Bivens questions if he had only possessed one (1) video but that video was one hour long, what is the government's rational for increasing the penalty based upon the length or number of videos? Further, Bivens argues that the government doesn't provide any factual information to suggest that an offender who possesses more than 600 images of child pornography is, somehow, a more 'serious' offender or a 'greater' risk to society than someone who merely possesses 250 images of child pornography. On the contrary, the main logic behind using the 'number' of images seems to be to prevent the defendant from using an Affirmative Defense as discussed in the Federal Sentencing Guidelines Manual. The Manual states that 'It shall be an affirmative defense to a charge of violating subsection (a)(5) that the defendant-(1) possessed less than three images of child pornography.' As previously stated, the defendant has admitted that he received child pornography and accepted the responsibility for his actions. He does not seek to use an Affirmative Defense in an effort to reduce his responsibility. The defendant avers that the 'number' of images that he received were a direct result of his hoarding and obsessive-compulsive behavior, not an indication that he is a more serious offender. Based upon the arbitrary number used to determine this increase and the failure of the government to provide any rational basis for the same, the defendant objects to the five (5) level increase recommendation and respectfully requests that this increase not be considered by the Court."

USSG §2G.2(b)(7)(D) directs that if the offense involved more than 600 images, the offense level is to be increased by five (5) levels. The Stipulated Factual Basis for Guilty Plea, signed by all parties in this case, indicates, "The forensic examination of the defendant's computer and external hard drives revealed 294 movies and 28 images all identified as child pornography.

Pursuant to Application Note 4(B)(ii), each video, video clip, movie, or similar visual depiction shall be considered to have 75 images. Based on these instructions, the number of movies and images possessed by the defendant equates to a total of 22,118 images. Effective April 30, 2003, Congress directly amended this guideline to add subsection (b)(6) [now (b)(7)] to increase the offense level based on the number of images involved in the offense as part of the PROTECT Act, Pub. L. 108-21, § 401(i)(1)(C), effective April 30, 2003.

The defendant claims that the number of images he possessed were a result of obsessive-compulsive behavior manifested in hoarding. This "hoarding" habit among collectors of child pornography is well established in the Seventh Circuit, although it has not been discussed in detail in the Fifth Circuit. *See, e.g., United States v. Watzman*, 486 F.3d 1004, 1008 (7th Cir.2007) (endorsing the observation that child pornography is hoarded); *United States v. Hall*, 142 F.3d 988, 995 (7th Cir.1998) (holding that child pornographers' tendency to maintain their collections for long periods of time was part of a showing demonstrating more than a fair probability that evidence of criminal activity would be discovered).

In recognizing the well-established hoarding habits of collectors of child pornography, the Seventh Circuit's holding in *United States v. Prideaux-Wentz*, 543 F.3d 954 (7th Cir. 2008) and cases from other circuits discuss certain circumstances in which years can pass between information about child pornography offenses and applications for search warrants occur. These cases discuss "staleness" as it relates to search warrants and also provide the rationale for volumes of images being hoarded on individual computers. See, e.g., *United States v. Burkhart*, 602 F.3d 1202, 1206–07 (10th Cir.2010) (holding that an email between child pornography distributor and the defendant that occurred two years and four months before issuance of a search warrant for the defendant's home was

not stale); *United States v. Morales–Aldahondo*, 524 F.3d 115, 119 (1st Cir.2008) (holding that a more than three-year lapse between the defendant's purchase of child pornography and the warrant application did not render the information stale because a special agent attested that those who download child pornography tend to retain images for years and use computers to augment and store collected images); *United States v. Eberle*, 266 Fed.App'x. 200, 205–06 (3d Cir.2008) (holding that three-and-a-half-year-old information was not stale "because individuals protect and retain child pornography for long periods of time as child pornography is illegal and difficult to obtain"); *United States v. Irving*, 452 F.3d 110, 116, 125 (2d Cir.2006) (rejecting staleness argument where warrant was issued based on, among other things, various letters the defendant wrote two or more years earlier about his past sexual exploitation of children, a five-year-old witness statement, child erotica images on diskettes found five years earlier in the defendant's luggage, and five-year-old identifications by children who witnessed the defendant sexually abuse young boys); *United States v. Riccardi*, 405 F.3d 852, 861 (10th Cir.2005) (finding five-year-old information relied upon in part in issuing search warrant was not stale).

Nowhere do any of these courts validate hoarding as a justification for possessing volumes of images. Nor do they hold that USSG §2G.2(b)(7)(D) is not applicable after considering this compulsive behavior. The defendant has not provided the court with any cases on point and this court will not find that the alleged hoarding and/or compulsive behavior is a defense against the application of USSG §2G.2(b)(7)(D). Jurisprudence indicates that those who collect and view child pornography hoard their collections for long periods of time which would explain the sheer volume of images found on the defendant's computer. There is no justification, however, for holding that this compulsive behavior is an exception to the application of USSG §2G.2(b)(7)(D). Therefore, the

defendant's objection is OVERRULED.

Bivens argues that Under the Federal Sentencing Guidelines Manual §2G2.2(b)(1) Special Offense Characteristics: 'If...the defendant's conduct was limited to the receipt...of material involving the sexual exploitation of a minor...and the defendant did not intend to traffic in, or distribute, such material' then the offense level should decrease by two (2) levels. Bivens argues that this characteristic is supported by the government's decision to allow the defendant to plea only to receiving child pornography. He further argues that since there is no evidence that he intended to traffic or distribute any child pornography, §2G2.2(b)(1) should apply and his offense level should decrease by two (2) levels.

Based on the ruling to Objection No. 2 above, the defendant qualifies for an increase in his offense level for distribution of child pornography by using peer-to-peer software, and his admission that he was aware that others could obtain the files from his computer. This conduct was not limited to the receipt or solicitation of material involving the sexual exploitation of a minor and he does not qualify for a reduction in his offense level under USSG §2G2.2(b)(1). This objection is OVERRULED.

Finally, Bivens objects to the total offense level stated in the PSR based upon all of the objections discussed herein. The court has overruled all of the defendat's objections, therefore the base offense level will remain unchanged.

The offense of conviction carries a statutory mandatory minimum sentence of imprisonment of five (5) years. Therefore, the minimum term of imprisonment the defendant can receive in this matter is five (5) years, absent the filing of a motion by the Government under 18 U.S.C. §3553(e) giving the Court authority to impose a sentence below a statutory minimum so as to reflect a

defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

Lake Charles, Louisiana, this ____ day of October, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE